Happy to hear from you when you're ready. Good morning. May it please the court. I'm Andrea Harris from the Federal Defender's Office on behalf of Mr. Lamarcus Thomas. There are two key reasons in this case why the district court erred in finding that the good faith exception applied to save the invalid search warrant in this case. First and foremost, the detective did not reasonably rely on the warrant that was issued by the magistrate in this case. Instead, he relied on other information that was known only to him and that was not shared with the magistrate. When considering application of the good faith exception, this court has said many times that the court should examine the totality of the information that was shared with the magistrate and that that warrant was reasonable. This court has said that in United States v. Doyle, which is one of the two key cases that we kind of analyzed in this case. They've also said it in United States v. Legg, which was a 1990 case, and then United States v. Perez, which is a 2004 case of this court. But the one time we really focused on this question and addressed this question, we came out the other way in McKenzie Goode. And that was my second reason that I think that the court erred. McKenzie Goode was a very limited holding. McKenzie Goode specifically limited its holding to the case of... And I think those two things are key. Number one, that the fact was uncontroverted. And number two, that it was inadvertently omitted. And so the information in that case that was omitted was that the defendant, Mr. McKenzie Goode, lived in the place to be searched. And here they forgot to staple, it looks like, maybe the arrest warrant to the search warrant, which would have put the date right in front of the magistrate. In Mr. Thomas' case. Right. There was a reference to an arrest warrant. And if they had attached the arrest warrant to the search warrant so that the date was in front of the magistrate, would you say then there would not be a staleness problem? There would probably not be a staleness problem that was the main holding in Doyle, but I would argue still that there was still not probable cause to search the phone at all. So then what you have is clearly probable cause to support that the officer is investigating this aggravated sexual battery, that there was this report, the children made these allegations, and the defendant corroborated these allegations. But there's still nothing, even if you attach those prior arrest warrants. When you look to McKenzie Goode, if there were uncontroverted facts which were known to the officer, wouldn't that still, might that still have some bearing on the case? I don't think it would have any bearing on the Leon determination because ultimately it seems to me in these cases what you have to ask yourself is what happened here, the kind of police misconduct that we need to deter. And the officer had quite a bit of information, I guess, based on his conversation with Mr. Thomas in which he admitted much of the misconduct. And then he didn't try to circumvent the warrant process. He went and got the warrant. Now the warrant may have been lacking in probable cause as the district court found. But even if it was lacking in probable cause, Leon has indicated that you can't put officers in the position of second guessing a magistrate's determination. No, but I think what the key is, is that there has to be objective reasons for believing that the officer relied on the magistrate's determination of probable cause. And here we don't have that. I mean clearly the affidavit is clearly lacking. Can I go back to that about the affidavit being clearly lacking? On the nexus question, I understand that you think on its face there wasn't enough there to show nexus and the district court agreed. But even if you don't go beyond the face of the affidavit, aren't we already into Leon territory on nexus? I mean it seems at least kind of a close question if an officer says, I mean Anderson says already we can kind of draw common sense inferences about where evidence might be found. And on top of that, you have the officer coming in and saying, look, in my training and experience, when sex offenders do this, they do keep souvenirs on their cell phone. Absolutely. And maybe not enough for probable cause, maybe just not enough tailored to this particular guy, this particular situation. But I would think we're in a gray zone under Leon already just on the face of it when it comes to nexus. I think that we would perhaps be in a gray zone if the officer had included the information that I talked to the children's mother and she said that he called me or left voicemails or whatever. You think that no reasonable officer could think that when I, under Anderson, which we're totally allowed to draw common sense inferences about where evidence will be found, and on top of that, I say in my personal experience and history, I think I'm going to find evidence on my cell phone. Because offenders who commit this kind of an offense keep this kind of thing on their cell phone. No reasonable officer could believe that a magistrate could sign off on that as sufficient nexus? No, because the magistrate didn't know that there was any connection at all to the phone. And what I was going to say is if the officer, I would argue that even if the officer included the information in the affidavit, oh, and the mother told me that Mr. Thomas called several times or left voicemails or whatever. I would still argue that that didn't have the sufficient nexus to this particular phone. There was no evidence as to what phone number he called from, what phone was attached to this LG cell phone. There were two phones found during the search. They said there was this other phone. What was the reason to believe it was this phone versus another phone? Doesn't Judge Harris's illustration, though, undermine that argument? To some degree, probable cause is initially premised upon the fact that in this officer's experience, these types of defendants keep information after commission of the offense. Doesn't that somewhat indicate that there's a nexus between the information provided and the phone in the defendant's possession? Well, if you'll recall, the officer testified that, in fact, there was no evidence recovered on the phone that related to the phone. I know, but I don't know that you want us to get into how the search worked out as a standard for reviewing probable cause in good faith. I guess what I'm trying to get at is if the affidavit had included that information about some connection to a phone, then it may have been reasonable for the magistrate to make that inference. And then I think we get into that area where there's some indicia of probable cause because it would have been reasonable for the magistrate to make this inference. But what we specifically don't look at is whether the officer believed he had probable cause. Can I ask you a question that goes back to what Judge Wilkinson was talking about? Just explain to me in kind of common sense terms, what am I worried about here? I understand when it comes to police practices, I totally understand that officers might have an incentive to keep exculpatory facts away from a magistrate or put in false facts and in that way kind of manipulate the warrant process. But why should I worry that there are a lot of officers running around out there who have enough facts to get to probable cause, but don't put them in the search warrant affidavit, running the risk that they're not going to get the warrant? Why is that something we need to worry about and deter? That's what I'm not getting. Well, I mean, Detective Coleman was operating pursuant to his department practice to include just the bare minimum. But the practice was to include enough to get the warrant. He blew it. He was contrary to office policy. He blew it at his own peril. But all officers blow it at their peril. That's what I'm saying. Like, what is the incentive of any police officer anywhere who has some information that will push an affidavit over to probable cause to say, I'm not going to put it in? Well, the incentive here was, well, we want to avoid media scrutiny. But he made a misjudgment here. I mean, the policy was always put in enough for probable cause, just don't put in more. So he made a misjudgment about what would be enough. He thought that by relying on my experience and my expertise and apparently by referencing the arrest warrant, I'm putting everything in front of the magistrate. That was wrong. But what's the incentive for police officers to sort of systematically get that wrong? Well, I mean, the incentive was to avoid the public being aware of the search warrants. And I think the Constitution requires that these affidavits be under oath and affirmation and that a neutral and detached magistrate evaluate the evidence. Not that the officer himself believes he has enough so he can just include what he thinks is enough. Because that kind of does away with why do we need to have this detached and neutral magistrate review it. The risk the officer runs by not including the information is probably twofold. Number one, as Judge Harris points out, you might not get the warrant at all. And number two, if you do get the warrant, the court may look at it more skeptically in view of the information that was omitted. So, I mean, I think to come back to Judge Harris's question about why is this something we need to worry about. And I'm not sure it is because there are two risks that the officers run. One is the risk before the magistrate. And secondly, there's the risk before a court. So the incentives would still be, it seems to me, to include the information. Well, but I think, you know, even not looking at the media scrutiny, which is what the officer gave as the reason, I could certainly see, well, we don't want the defense attorneys to know this information when this case, you know, down the road gets prosecuted. There are a lot of situations where they wouldn't want to have an informant disclosed. And the rest, I don't know whether that was at play here or not. Right. But there are procedures. There are statutes. There are mechanisms in place to protect that information from the public or from, you know, outside review by sealing the warrants. And so there are mechanisms for dealing with those sorts of things that don't allow the police officer. Just when you come back to the specifics of this case, Coleman really had, either one way or another, an awful lot of information at his fingertips. And the two boys had said that Thomas had molested them. And in an interview before making any arrest, Thomas admitted that he had molested them. I mean, it's not often that you get that kind of fact. And then the other thing that's, I think this was within Officer Coleman's knowledge that Thomas was trying to call the mother of the boys to arrange other times to meet them. And it just seems to me that, I don't know, that this is not an officer who has tried to skirt the warrant process. And it's also an officer with a lot of information. Well, he has a lot of information about the aggravated sexual battery that he had already obtained arrest warrants for. I disagree that he had a lot of information connecting that crime to the particular phone that was searched. Mackenzie Good was a case that allowed, the information that was omitted was that the defendant lived in the house, the place to be searched. And so it was inadvertently omitted, but it was necessary because that was what provided the nexus to the thing to be searched, which was the home. Here, the officer didn't provide any nexus to the thing to be searched. As I mentioned, this is not, far from trying to skirt the warrant process, the officer here applied for a warrant on two different occasions. Number one, he applied for an arrest warrant, and then he applied for the search warrant. So, you know, this is not rogue conduct. He's applied for warrants multiple times. And in the search warrant, the arrest warrants, as I understand it, were referenced. So, you know, if a Leon good faith exception or whatever would... Right, but so we keep focusing on what officer Detective Coleman knew, and that is not the focus. The focus is what a reasonable officer looking at this warrant objectively believed that there was probable cause. I don't think that's the way we framed it in McKenzie Good. I think we said, no, no, Leon talks about under all the circumstances. And so the question is more, did this officer kind of act reasonably under all the circumstances? And then we said in McKenzie Good, and that includes what the officer knew. I'm having trouble getting past McKenzie Good. I'm out of time, but I can answer a few. So as far as McKenzie Good is concerned, the cases all talk about whether it was reasonable to rely on the magistrate's determination. And that's the key. And so in McKenzie Good, it was reasonable to rely on the magistrate's determination, because everyone agreed that this, it was just a simple oversight. They didn't say that the house that they were searching was... If the magistrate only knew what was in the affidavit, it would have been... Right, but that was relating specifically to the thing to be searched. Here, the thing to be searched was the phone, and there wasn't sufficient information for that. Thank you. Good morning. May it please the Court, I am Nancy Haley, Assistant U.S. Attorney for the Western District of Virginia for the United States. I think the Court has already focused on some of the obviously relevant points there. This is not the case where somebody was trying to hide the ball. This is not the case where we did not have the facts that were sufficient to create probable cause to search a phone that was lawfully seized, pursuant to a search incident, to arrest. This is more of a case where an officer perhaps more inarticulately included all of the facts. Can I ask you, I know your first argument is, look, this affidavit is enough for probable cause. We don't even have to get to Leon, let alone McKenzie Goode. And I totally understand your position on why there's enough there on nexus for probable cause, but what exactly is your argument on staleness? Why is there enough information from which the magistrate could conclude that there's likely evidence on the phone and it will still be there because this crime happened sometime recently? Yes. So that's a great question, of course. And I know that Mr. Thomas has spent a lot of time on Doyle, for example, which had no nexus, nothing, referencing type of time period. And what did we get here? Because I'm looking at the affidavit and I don't see anything about time period. Correct. It does. So our affidavit or the affidavit in the Thomas case specifically references the arrest warrant. The arrest warrant was filed in the same magistrate's office. Is any case law supporting that, that like if you reference a document which is not included, if it's in the same courthouse, that's good enough? No, I have not anything directly in point, but I will note that on, I think it's page 124 of the joint appendix, it appears that the magistrate was aware of what case this had. Was referring to, because there is a part where on cross-examination, Detective Coleman was asked, and this is towards the bottom of J124. Question, that was after on July 21st, you made a statement that the issuing magistrate did not ask any questions at the time Detective Coleman applied for the search warrant, correct? Answer, correct. Question, that was after on July 25th, you stated the issuing magistrate seemed to be aware of the case against Thomas and asked if the search warrant for the cell phone was related to the subject who was brought in the other night, right? Answer, correct. And I know that there was probable causes, not your main argument, but I was just trying to get a handle and thinking about kind of good faith in the officer. Is the idea that maybe the officer made a clerical error meant to attach the affidavit, or is it that the officer reasonably knew what he was doing? Or reasonably believed, look, referring to another document that's in the same courthouse is good enough? I don't know that there was anything in the record that would suggest that. Although I do think as a good faith type of thing, what he did should be considered sufficient. There's only one magistrate's office. This would have been filed in the same place. It was within, I think the search warrant was applied for on January 13th of 2015. The arrest warrant was filed on January 5th of, and the arrests were made, January 5th of 2015. So within a short period of time where he's referencing I arrested somebody for molesting a couple of boys, he's then saying on that date I recovered a phone. So I think that would be, I would think that would be sufficient and at least an indication of good faith that he was trying to refer to the appropriate documents that would supply that particular information. So I do think that is relevant. I do think this is different from Doyle. Doyle had, I mean the problem with Doyle in large part was that there was an allegation by I think an uncle that one of the children or a step uncle that one of the children had referred to seeing nude pictures. So there were a couple of questions in there. Do nude pictures qualify as child pornography, first of all? But secondly there was nothing. Two different, I mean Doyle was a search of a home. Search of a home. And when all is said and done they're more sensitive. And the affiant in Doyle was very different from the affiant here because the affiant in Doyle had not participated in the investigation at all. Correct and there were some weird things in that. I think the affiant or the person who ended up testifying or one of the people had had an accident. The affiant here was the lead investigator. Yes. And the affiant in Doyle had no acquaintance with the investigation at all. Correct. And in that particular case one of the biggest holdings of course was that you can't use just child molestation to search for child pornography. And here we had an officer who was trying to broadly search the phone of course, but he was searching for evidence to corroborate his investigation on the actual aggravated sexual abuse of the two minors that he had investigated Mr. Thomas for. So I think that's reasonable. And I think of course in terms of any type of issue of staleness, the offenses were alleged to have occurred in October. They were actually in September. That came out at the hearing because we found out there were some other acts that the defendant had done to another minor on the original date in the arrest warrant. But it was one month apart. And within October, November, December, January, three months they recovered the phone. And I know Ms. Harris was suggesting that it's uncontroverted that this phone was used. I think it's a reasonable inference to say that the phone that was recovered from the defendant on January 5th would have been the phone that he would have used to contact the family members or to try to set up another rendezvous with the children. The question about the phone being recovered at the arrest, and it goes back to what Judge Wilkinson was saying about home searches being different. If he had been arrested and did not have a phone on him, would this exact same affidavit have been enough for probable cause to search his house for a telephone? I mean, if you have the officer coming in and saying, look, I think people generally keep stuff like this on their phones. Can you search the person's house? That's my real concern in this case. This case seems sort of low stakes. I don't mean to suggest that it's never low stakes. But in this case, the police already had possession of the phone. The only question is under Riley whether they can search it. But what about when they don't have possession of the phone? Same standard for getting into a house to do a search of the house? Well, I think like any digital media, as long as you can establish a nexus between the digital media and a crime, that would work. That's my concern. Right. So I think it would have been, of course, preferable for the detective to have put in facts relating to the information that he obviously had about the phone or a phone being used during the commission of the crime. I'm supposing in that hypothetical, the questions would go to the breadth of the warrant. Correct. Cell phones are small. If you're searching for a cell phone in a house, you're pretty much tossing the whole place. Right. And I think, you know, I know there's the prosecutors who do these types of cases are now being a little bit more creative in trying to search. We don't have that particular hypothetical. Yes, we do not have that particular hypothetical. I don't know that we would have been able to go into the house and do what they did in Doyle and search for child pornography. I think if you could have established that there was a nexus to say that he had a phone and that that would have had information, including perhaps text, perhaps voicemails, things like that, we would have been able to search for that phone. But in this, in Doyle, it was a search and seizure issue. In this case, it's already lawfully seized and it was just the subsequent search of that particular phone. So I do think that there is a distinction. And I would point out, I know the court has been highlighting this. I noted in, let's see if I can find the case. One of the cases, there was, I think it's Davis, basically said, there it is, talks about the real Davis versus United States 131 Supreme Court 2419, a 2011 case, just like McKenzie Groot and Doyle or 2011. So what they said was a deterrence value has to be a necessary condition but not sufficient. And it said, it noted the recalibration of the cost benefit analysis post Leon to focus on the flagrancy of any misconduct. In this case, there's no evidence that the detective intentionally omitted anything. He was trying to do what he should do. He was trying to submit probable cost, sufficient probable cost to search that particular phone. And he, I think as this court noted, the policy was to include sufficient probable cost. It was not to hide the ball. In fact, the court, Judge Urbanski found there was no evidence that the detective was trying to hide the ball. And certainly the fact of saying that this phone was used during the course of the commission of this particular crime wouldn't have been the type of fact that he might have tried to minimize in the particular warrant. So I think he thought he had sufficient information. A magistrate thought he had sufficient information. We give great deference, of course, to magistrates in these types of cases. It was objectively reasonable. The other thing too is it looks like he had a lot of the Winchester office or Commonwealth Attorney's office prior to getting the arrest and search warrants. And I know that is a big issue in terms of finding good faith as well. So I think this detective was doing everything he could to do it right. How often is that done? I mean, a consultation with the U.S. Attorney's office? Well, with the U.S. Attorney's office, we are supposed to review all of the warrants and the search warrants. All the warrant applications? Yes. What about that? Do you have any where you might not know, but at the state level? My guess is because a lot of times they're doing street crimes at the moment and they have to do something at the moment. If they can't get someone, they're probably just going to call the magistrate and see if they can go get something. But I don't know that for sure. Yeah, I got you. So is there anything further that you have? Or have we covered it in our discussion? I might ask a quick question while she looks. You sure may. Interpretation of McKenzie has intrigued me in this case. McKenzie speaks in terms of inadvertently omitting. And the facts of the case look like it was almost a, not a typographical error, but a simple oversight in failing to include information that everybody knew was required. This case has pointed me toward the use of the term inadvertently omitted in McKenzie and whether that's read narrowly or broadly. And it would seem to me in keeping with what Judge Wilkinson pointed out about we're looking, remember that we're looking at good faith, bad faith, that inadvertently could be broadly construed to instances where the officer had information but was relying on the magistrate to make the determination ultimately and could always reapply for a warrant, so to speak. Tell me what your, I didn't mean to give you that much of a hint, but tell me what your read of McKenzie is and how we interpret inadvertently in light of the facts of this case. I think it should be interpreted to say that as long as you're not trying to hide something, you're not trying to purposefully omit something, I think it should be interpreted fairly broadly. And I agree with you. If somebody went to a magistrate and they said, look, you don't have enough in here, do you have something else? They could either discuss it on the record there and exculpatory or exculpatory. And I think you pointed that out before when Ms. Harris was arguing certainly the type of information that we wish could have been put in a little bit more clearly. If you omit exculpatory information, you're going to have a Franks v. Delaware problem. Yes. But Judge Osteen's question is an interesting one because it's just not clear that the omission of further incriminating information is an attempt to deceive the magistrate. So the question then is, I guess, does inadvertently have some relationship to maliciously or I don't know, it's an interesting question. I totally agree. And I think some of the cases that found no good faith, especially pre-McKenzie Goode, would talk about not having mentioned that an informant had stolen some of the money given to buy some drugs. So that was a clear omission of something that would be exculpatory or impeachment in that type of case. In this case, we don't have that. He didn't put in more inculpatory evidence. And as this court has pointed out, the detective had revealed tons of inculpatory information. Even the defense attorney who represented Mr. Thomas at the suppression hearing said, this detective did a fantastic job, incredible job investigating this case. And it was clear there was probable cause for the aggravated sexual abuse and there was probable cause to search the phone that was seized. So it's a great question. I'm not sure where the boundaries are. Certainly as a government representative, I'm hoping the boundaries are pretty broad. Isn't it a little bit, because I also spent a lot of time on this thing. There's a whole separate Leon exception for if you're operating in sort of bad faith. And that includes omissions. And so the idea of grafting, you know, an especially rigorous inadvertence requirement over onto this other Leon exception seems just conceptually difficult to me. I really am having trouble with it. It's an interesting question, although it has been the case even prior to McKenzie Goode, of course, that you could look outside. The Fourth Circuit has been very clear. This court's been very clear that you can look outside the four corners of the Warren. So I do think it's something that may have to do with inculpatory. There's something doctrinally appealing, I think, about having one exception. Yes. The Leon exception rather than a laundry list of exceptions. I think that's a good point. But I think in this case, the officer acted very much in good faith. And I think Judge Urbanski. Let me ask my colleagues if they have. Thank you. We thank you very much, Ms. Haley. Ms. Harris has some rebuttal time. A couple of things I would like to bring up. As I was reviewing cases for this hearing, I reread this court's case, US v. Bynum, which is a 2002 case. Judge Motz wrote the opinion. And Judge Michael wrote a dissent in that case. And in that case, he dissented that the majority had found that the good faith exception applied because the affidavit was not so lacking in addition of probable cause. But the significant part of the dissent that I think is interesting and helpful here is he addresses the government's secondary argument in that case, which was not decided by the majority, but which is exactly the case here, that the law enforcement officer knew but did not tell the magistrate information that established this confidential source that was referenced in the affidavit's reliability, but didn't include that in the affidavit and did not tell the magistrate about it. So Judge Michael then analyzes whether the court can consider other information that's just known only to the officer in evaluating whether it was objectively reasonable. And what Judge Michael says is what the agent knew but failed to tell the magistrate is irrelevant to the officer's good faith because Leon requires an officer to have an objectively reasonable belief that his affidavit gave the magistrate a substantial basis for finding probable cause. I totally understand that argument. I mean, I can see, I see the argument. It seems to me we resolved it in McKenzie Goode. And I know, I think you said in your brief, you're kind of preserving this because there's a circuit split on this and you may want to. Well, there's a circuit split on whether other information outside the four corners of the affidavit can be considered. And when Ms. Healy just said that this court has said over and over again that other information outside the four corners can be considered, I don't think, aside from McKenzie Goode, and I think this is kind of a very much more limited holding than the government argues for, what this court has held is that other information that was also presented to the magistrate but that wasn't included in the affidavit can be considered. And that's Legg, that's Edwards, that's Perez. So even though the information wasn't in the affidavit, it was presented to the magistrate. And so I think that's a critical distinction, and that's not what we're dealing with here. Would you mind sharing your interpretation of inadvertently omitted under McKenzie? I would. I guess I should rephrase that question. So inadvertently I think just means simply that. It was unintentional. Here we don't have that. The detective, for better or for worse, was operating pursuant to a department policy of providing just the minimal amount of information necessary. But he unintentionally got it wrong, right? Well, he got it wrong, but he got it wrong at his peril. And so Mr. Thomas has a right to have the information, you know, the magistrate make a neutral decision. So are you trying to make a distinction between an officer who comes to a suppression hearing and says, I thought I put that thing about the phone call to the mother in the affidavit. My bad. It was sort of a I thought it was in there and it wasn't. And an officer who comes to the hearing and says, I thought I had enough for probable cause without it. My bad. I should have put it in. Those are two different forms of inadvertence and one is okay and one is not. Well, here, I mean, there's no evidence that it was, in fact, inadvertent. I mean, it was intentional. He said, I just put in. Right, but I assume had he been pressed on your theory of inadvertence, he would have said, I thought I didn't need it. I thought I had enough for probable cause. I was wrong. Inadvertently I got the probable cause standard wrong. Right. So how is that? He's not a lawyer and that's why we have it attached to neutral magistrate. So how is that different from the officer who comes and says, I thought I wrote it down on the affidavit, but I was wrong? Well, because in that case, you know. I mean, either way, they're both inadvertent mistakes. In McKenzie Goode, he knew the information and intentionally didn't put it in the affidavit because he didn't think he needed it. In McKenzie Goode, he didn't include it because he just simply forgot, not because he didn't think he needed it. It would be a lot easier to deter the first thing. We could just be like in McKenzie Goode, you should proofread your affidavit. Right. Whereas this one's going to be a lot harder to deter because it was a good faith but mistaken judgment about what counts as probable cause. Right. So to compare, if the officer had forgotten to put in the affidavit that Mr. Thomas had a phone on him when he arrested him on these other warrants, that would be an inadvertent thing. He forgot to mention that the person had a phone in his pocket, and that's what they wanted to search. Just like they forgot to mention that he lived at this house that they wanted to search. So that's kind of a different thing than forgetting to include all this other information that the magistrate clearly needed to rely on to make the probable cause determination. Thank you. We'd like to come down and greet you both, and then we'll take a brief recess.
judges: J. Harvie Wilkinson III, Pamela A. Harris, William L. Osteen Jr.